IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTAULIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action |
| v. | ) | No. 5:12-cv-05985-SD |
| | ) | |
| ANVIL INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, STAY OR TRANSFER
PLAINTIFF'S AMENDED COMPLAINT

Pursuant to Federal Rule of Civil Procedure 12(b), Defendant Anvil International, LLC ("Anvil") respectfully submits this Brief in Support of its Motion to Dismiss, or in the Alternative, to Stay or Transfer the Amended Complaint of Plaintiff Victaulic Company ("Victaulic").

## INTRODUCTION

Anvil's earlier-filed action in the United States District Court for the Northern District of Georgia relates to the exact same two patents at issue in this matter. The federal circuit first-to-file rule mandates that this action be dismissed, or in the alternative, stayed or transferred.

1

## BACKGROUND FACTS

On October 3, 2012, Anvil, a corporation with its principal place of business in New Hampshire, and its parent company, Mueller Water Products, Inc. ("Mueller"), a corporation with its principal place of business in Georgia, filed a complaint against Victaulic in the U.S. District Court for the Northern District of Georgia.  *See* Complaint filed in Case No. 1:12-cv-03446-JEC (N.D. Ga.) ("N.D. Ga. Case"), attached as Exhibit A ("Georgia Complaint").  In the Georgia Complaint, Mueller and Anvil seek a declaratory judgment that U.S. Patent Nos. 7,086,131 ("the '131 Patent") and 7,712,796 ("the '796 Patent"), each owned by Victaulic (collectively "Victaulic Patents"), are both invalid.  *Id.*  In support of their invalidity arguments, Anvil and Mueller note that the United States Patent and Trademark Office already has determined in pending re-examination proceedings that a reasonable likelihood exists that one patent is invalid and another patent is at least partially invalid.  *See id.* ¶¶ 34, 37.   In the Georgia Complaint, Mueller and Anvil also seek a declaratory judgment that their SlideLOK coupling, an advanced rigid pipe coupling, does not infringe the Victaulic Patents.  *See id.*

Mueller and Anvil initiated the Georgia Complaint because of Victaulic's litigious history and the threatening statements made by Victaulic employees to Anvil representatives throughout a trade show occurring on September 25 and 26,

2012. *See id.* ¶¶ 45-51. Mueller and Anvil were additionally concerned about their rights to manufacture and sell the SlideLOK coupling because a letter from Victaulic dated September 28, 2012 asserted Victaulic's "patent portfolio" and asked for product samples from Mueller and Anvil. *See id.* ¶ 53.

Sixteen days after the filing of the Georgia action, on October 19, 2012, Victaulic filed this action in the Eastern District of Pennsylvania. *See* Complaint ("Pennsylvania Complaint") (Dkt. Entry 1). The Pennsylvania Complaint was filed against Anvil (and not Mueller) alleging that the SlideLOK coupling infringes the '131 and '796 Patents, the very same patents that are the subject of the Georgia Complaint. *See* Pennsylvania Complaint ¶¶ 16-26. The Pennsylvania Complaint does not assert any other claims or patents; nor does it involve any other parties. *See id., generally.*

On November 2, 2012, Victaulic moved to dismiss, or in the alternative, to transfer, the N.D. Ga. Case. *See* Dkt. Entry 5 in N.D. Ga. Case, attached hereto as Exhibit B ("Motion to Dismiss the Georgia Complaint"). In its Motion to Dismiss the Georgia Complaint, Victaulic argues that it never directly threatened Anvil with suit, either orally or in writing. *See id.* at 12, 17-18. Specifically, Victaulic asserts that "there was no 'real' and 'immediate' dispute between Victaulic and Anvil." *Id.* at 18.

3

On December 3, 2012, Mueller and Anvil responded to the Motion to Dismiss the Georgia Complaint, outlining the numerous reasons why a "real and substantial" controversy existed between the parties to support declaratory judgment jurisdiction.  *See* Dkt. Entry 16 in N.D. Ga. Case, attached hereto as Exhibit C ("Opp. to Mot. to Dismiss Georgia Complaint").  This controversy was created by, among other things, Victaulic's threatening tradeshow comments, Victaulic's letter to Mueller and Anvil, Victaulic's long history of filing patent infringement lawsuits, and the contentious history between the parties in the re-examination proceedings and in one other lawsuit.  *Id.* at 2-6.

Mueller and Anvil's opposition also outlines the reasons why venue was proper in Georgia.  First, under the first-to-file rule, Georgia jurisdiction applies.  Second, not only did Victaulic send a letter regarding this dispute to Mueller in Atlanta, but Atlanta is also the site of many of the relevant witnesses and documents, as well as the plaintiffs' choice of forum.  *Id.* at 21-23.   Also important is Anvil's decentralization, as its operations are located throughout the United States, leaving it without a clear epicenter, and therefore, a clear home venue.  *Id.* at 21-22.

# ARGUMENT

### A. Federal Circuit's First-To-File Rule Supplies The Rule Of Decision On This Motion.

#### 1. The First-To-File Rule Is Designed To Prevent Concurring Actions In Different Jurisdictions.

Anvil seeks dismissal of the Pennsylvania Complaint under the "first-to-file" rule. The first-to-file rule is the doctrine of federal comity applicable to venue or forum disputes involving similar, concurrent actions in different jurisdictions. *See Shire U.S., Inc. v. Johnson Matthey, Inc.*, 543 F. Supp. 2d 404 (E.D. Pa. 2008). The U.S. Supreme Court first described the doctrine in 1824, stating, "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver*, 22 U.S. 532, 535, 6 L. Ed. 152 (1824). Under the rule, the forum of the first-filed case is favored unless fairness or efficiency considerations require otherwise. *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993), overruled on other grounds by *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S. Ct. 2137 (1995).

United States District Courts, including the Eastern District of Pennsylvania, "apply substantive patent law as articulated by the Court of Appeals for the Federal Circuit, as well as Federal Circuit rulings on matters of procedural law which affect 'national uniformity in patent practice.'" *Shire U.S., Inc. v. Johnson Matthey, Inc.,* 543 F. Supp. 2d 404, 408 (E.D. Pa. 2008) (quoting *Genentech,* 998

F.2d at 937); *see also Institut Pasteur v. Simon*, 332 F. Supp. 2d 755, 757 (E.D. Pa. 2004) (stating that declaratory judgment of patent infringement is a "procedural issue[] intimately involved in the substance of enforcement of the patent right," thus requiring application of Federal Circuit jurisprudence); *Schreiber v. Eli Lilly & Co.*, No. 05-CV-2616, 2006 U.S. Dist. LEXIS 13477 (E.D. Pa. Mar. 27, 2006) (applying Federal Circuit law to the first-to-file rule). The Federal Circuit has endorsed application of the first-to-file rule in patent actions to create such uniformity. *Genentech,* 998 F.2d at 937.

Thus, "[w]hen two actions involving nearly identical parties and closely related patent infringement questions are filed in separate districts, which happens with some frequency in contemporary litigation, the general rule is that the case first filed takes priority, and the subsequently filed suit should be dismissed or transferred or stayed." 14D Wright, A. Miller & M. Kane, Fed. Prac. & Proc. Juris. § 3823 (3d ed. 2011). This is true regardless of whether a case proceeds under Federal Circuit law or Third Circuit law. *See, e.g., Fun-Damental Too v. Universal Music Group*, No. 97-CV-1595, 1997 U.S. Dist. LEXIS 4784, *8-9 (E.D. Pa. April, 10 1997) (J. Dalzell) (granting the motion of the first-to-file plaintiff to enjoin later-filed copyright proceeding in another state and denying defendant's motion to dismiss or stay).

In patent litigation, "[t]he first-filed action is preferred, ***even if it is declaratory***, 'unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, require otherwise.'" *Serco Services Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995) (quoting *Genentech*, 998 F.2d at 937) (emphasis added). The Federal Circuit's approach to the first-filed rule "mirrors the underlying purposes of the rule, to promote comity among courts and wise expenditure of judicial resources, as well as fairness and consistency of results, by avoiding duplicative concurrent actions." *Shire*, 543 F. Supp. 2d at 408 (citing *Genentech*, 998 F.2d at 938).

Under the first-to-file rule, a district court may choose to stay, transfer, or dismiss a duplicative later-filed action. *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012). The preference for the first-to-file forum is generally only avoided "where a court finds compelling or special circumstances." *Klein v. United States*, No. 94-5152, 1995 U.S. App. LEXIS 13477 (Fed. Cir. May 3, 1995) (internal quotation marks omitted). In applying Third Circuit, not Federal Circuit, law, this Court, in a declaratory judgment action involving copyrights, concurred that "[t]he longstanding, general rule in the Third Circuit is that, absent special

7

circumstances, the court which first has possession of the subject matter must decide it." *Fun-Damental*, 1997 U.S. Dist. LEXIS 4784 at *8-9.[2]

Finally, although exceptions to the first-to-file rule in patent cases do exist, any such exception must be justified by a "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech* at 937-38. Thus, the Federal Circuit has made clear that only in cases where it would be "unjust or inefficient" to proceed in the first-filed forum should an exception exist. *Id.*

> Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest. The [Supreme] Court cautioned against "rigid mechanical solutions" to questions of forum, stressing the importance of conservation of judicial resources and the comprehensive disposition of litigation.

*Id.* (citing *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 342 U.S. 180, 183, 72 S. Ct. 219, 96 L. Ed. 200 (1952)). As discussed below, none of these reasons applies here.

---

[2] In *Fun-Damental,* applying Third Circuit law, the Court held that a "possible" reason to depart from the first-to-file rule is "when forum shopping is the sole reason for the choice of the situs of the first suit," at 11-12. The Federal Circuit does not follow this variant of the first-to-file rule, but rather discourages courts from considering bad faith or forum shopping as exceptions to the first-to-file rule. A rationale for this is that appeals of patent decisions are all heard by the Federal Circuit, rendering forum-shopping consideration inapposite. *See Serco*, 51 F.3d at 1040.

8

### 2. The First-Filed Action May Be A Declaratory Judgment Action.

The Federal Circuit has specifically held that, unless compelling exceptions apply, a first-filed action must be given priority, even when it is a declaratory judgment action. In so doing, the Federal Circuit specifically declined to adopt the procedural rules of other circuit courts that a first-filed action for a declaration of rights should yield to a later-filed infringement suit. *Genentech*, 998 F.2d at 937 (declining to adopt *Tempco Electric Heater Corp. v. Omega Engineering, Inc.*, 819 F.2d 746 (7th Cir. 1987)). The Federal Circuit chose not to adopt a general rule favoring the patentee's choice of forum, instead finding the first-filed rule more compatible with "the purpose of the Declaratory Judgment Act to enable a person caught in controversy to obtain resolution of the dispute, instead of being forced to await the initiative of the antagonist." *Id.* The Federal Circuit also has reasoned that traditional forum-shopping concerns, which are often cited by other courts as a reason to depart from the first-to-file rule where the initial action is anticipatory, are not relevant in patent cases. *Serco*, 51 F.3d at 1040 (noting that "The creation of this court has in large part tempered the impact of traditional forum shopping in patent cases, so the stakes of a race to the courthouse are less severe.").

Where the Federal Circuit has reviewed cases under the first-to-file rule, the case on appeal has generally been the first-filed action. For example, both *Genentech* and *Serco* were before the Court of Appeals following the district

9

courts' dismissals of the first-filed actions. *Genentech*, 998 F.2d at 937; *Serco*, 51 F.3d at 1037-38. These cases – although reaching different results – both highlight the benefit of allowing the first-filed court to make the preliminary determination as to jurisdiction. Indeed, if both this Court and the Northern District of Georgia were to consider simultaneously the application of the first-filed rule to the Northern District of Georgia action, that duplicative consideration would consume unnecessary judicial resources and could lead to the conflict the first-filed rule seeks to avoid.

### 3. This Court Should Follow The Reasoning And Analysis Of The Federal Circuit As Applied In *Shire*.

*Shire* is particularly instructive here. In *Shire*, Johnson Matthey had filed a complaint in June 2007 in the Eastern District of Texas against a pharmaceutical manufacturer without naming Shire as a defendant. 543 F. Supp. 2d at 406-07. The subject matter of the Texas action involved Johnson Matthey's claim that the defendant-pharmaceutical manufacturer, by manufacturing a drug called Daytrana, had infringed a patent assigned to Johnson Matthey. *Id.* On July 18, 2007, Shire instituted a declaratory action against Johnson Matthey in the Eastern District of

Pennsylvania, seeking a ruling that it did not infringe the patent assigned to Johnson Matthey by distributing Daytrana.[4] *Id.*

Holding that the declaratory action should be dismissed because it shared the same subject as the Texas action, this Court stated:

> [T]he substantive touchstone of the first-to-file inquiry is subject matter. As such, because the Texas court obtained possession of the subject of this dispute on June 19, 2007, nearly a month before this Court obtained possession of the same, the first-to-file rule compels dismissal of the instant declaratory judgment action in favor of the Texas Action.

*Id.* at 409. Here, the Court should look only to the existence of the same subject matter and the sequence of the complaints to determine that the Georgia action should proceed.

### 4. The First-To-File Rule Requires This Court To Dismiss Or Transfer The Pennsylvania Complaint.

Just as the *Shire* court dismissed the later-filed action in the Eastern District of Pennsylvania, this Court likewise should decline jurisdiction and dismiss the Pennsylvania Complaint. There can be no dispute that the Pennsylvania Complaint is a virtual mirror-image of the Georgia Complaint. Indeed, the Pennsylvania Complaint alleges infringement of the exact same two patents at issue in the Georgia Complaint brought by Mueller and Anvil. There also can be no dispute

---

[4] Thus, the sequence of filings in *Shire* is the mirror-image of the sequence in this dispute, as here, the first-filed N.D. Ga. case is the declaratory judgment action and this later-filed case is the patent infringement action.

that the Georgia Complaint was filed sixteen days earlier than the Pennsylvania Complaint. Accordingly, the present action is precisely the type of "duplicative later-filed action" that should be dismissed, or at the very least, transferred or stayed.

Moreover, none of the factors that the court could conceivably consider would allow for an exception to the first-to-file rule here. As a threshold matter, there is no "sound reason that would make it unjust or inefficient to continue the first-filed action." *Genentech* at 937-38. For example, even though minor considerations at best, Mueller and Anvil did not forum shop, and there was no bad faith in filing the Georgia Complaint. Mueller and Anvil chose the Northern District of Georgia as the situs for the litigation because Mueller's principal place of business is in the Northern District of Georgia. Because Mueller is located in Georgia, it is the most convenient location for it, and its subsidiary, Anvil, to litigate.

In addition, the host of considerations favoring venue in Georgia show that efficiency and fairness dictate allowing the Georgia Complaint to proceed in lieu of the present action. Those factors include: (1) Anvil's operations are located throughout the U.S., including some operations in Georgia, (2) Anvil's executives regularly report to Atlanta, (3) Anvil relies on Mueller's in-house counsel, Jeff McClellan, who works in Atlanta, (4) Anvil's outside counsel that filed for the

reexamination of the Victaulic Patents is in Atlanta, (5) Anvil has witnesses and documents in Atlanta, including financial witness, and (6) a developer and co-inventor of SlideLOK lives in Alabama, close to Atlanta. *See* Opp. to Mot. to Dismiss Georgia Complaint at 21-23 and Declaration of Jeffrey McClellan filed in support of same.[5] Thus, the Northern District of Georgia "is the logical and proper place" for the suit brought by Mueller and Anvil to go forward. *See Fun-Damental* at 14.

Lastly, the Georgia Complaint was not "anticipatory" or a "race to the courthouse," even if such were to be a consideration in the first-to-file analysis (which the Federal Circuit has discouraged, *supra* at 8-9). Rather, the Georgia case was the result of legitimate concerns about Victaulic's intentions and actions, and the uncertainty they created with respect to the SlideLOK product. Although Mueller and Anvil were faced with an immediate *conflict*, thereby satisfying the requirement for a case or controversy under the Declaratory Judgment Act, they were hardly faced with evidence of an immediate *lawsuit*. Indeed, in its Motion to Dismiss the Georgia Action, Victaulic itself has made much ado about the lack of any threat of immediate litigation. *See* Motion to Dismiss the Georgia Complaint at 9-19. Victaulic cannot, therefore, now come to Pennsylvania and argue,

---

[5] Remaining considerations cited in *Genentech*, *viz.* "absence of jurisdiction over all necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest," are clearly inapplicable. *Id.* at 937-38.

inconsistently, that its second-filed action should be allowed to stand because Anvil's Georgia Complaint was anticipatory. Quite simply, the Georgia Complaint was filed as a result of a "substantial controversy" between "parties having adverse legal interests" – not the result of any warning that a Victaulic lawsuit was imminent. *See MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007) (holding that declaratory judgment jurisdiction exists not only where a direct threat of litigation is asserted, but also where "the facts alleged, under all the circumstances, show that there is a substantial controversy").

Finally, and as noted, even if this Court were to determine that the Georgia Complaint was anticipatory, the Federal Circuit has made clear that anticipatory patent cases do not involve the same forum-shopping considerations as other types of cases, and that the first-to-file rule should still apply. *See Serco,* 51 F.3d at 1039-40. Accordingly, this court should follow the Federal Circuit and decline to accept jurisdiction over the present case, either dismissing it, transferring it to the Northern District of Georgia, or at a minimum staying it, as requested.

## **CONCLUSION**

This Court has already ruled that a declaratory judgment plaintiff has the right to bring a declaratory judgment action when a case or controversy arises, without the "untenable '*Catch-22*'" of its action's being dismissed for being in a different forum than the declaratory judgment defendant, or being dismissed for

having been filed before the defendant filed its action. "If there is to be more than an illusion that a federal forum is to be available for a declaratory judgment plaintiff, the doors to the courthouse must at some point be opened and remain open." *See Fun-Damental* 1997 U.S. Dist. LEXIS 4784 at 13-14; *Genentech*, 998 F.2d 931 at 937.

Here, like the first-to-file plaintiff in *Fun-Damental,* Anvil deserves to preserve its choice of forum under the Declaratory Judgment Act and the clear mandate of the Federal Circuit. For this to occur, the present action must be dismissed, or in the alternative, stayed or transferred, under the first-to-file rule.

Respectfully submitted this 13th day of December, 2012,

/s/ Amanda G. Hyland
TAYLOR ENGLISH DUMA LLP
Jeffrey R. Kuester (admitted pro hac vice)
jkuester@taylorenglish.com
Georgia Bar No. 429960
Todd E. Jones (admitted pro hac vice)
tjones@taylorenglish.com
Georgia Bar No. 403925
Amanda G. Hyland (admitted pro hac vice)
ahyland@taylorenglish.com
Georgia Bar No. 325115

1600 Parkwood Circle, Suite 400
Atlanta, Georgia 30339
(770) 434-6868
(770) 434-7376 (fax)

HANGLEY ARONCHICK SEGAL
PUDLIN & SCHILLER
John S. Summers (Attorney ID No. 41854)
Jon L. Cochran (Attorney ID No. 314382)
One Logan Square, 27th Floor
Philadelphia, PA 19103
215-568-6200
215-568-0300 (fax)
jsummers@hangley.com
jcochran@hangley.com


*Attorneys for Defendant
Anvil International, LLC*